UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

OMAR ROBERTSON,                                :

                          Petitioner,          :       **REPORT AND**
                                                       **RECOMMENDATION**
                                                       **TO THE HONORABLE**
            -against-                          :       **RICHARD J. SULLIVAN**

BRIAN FISCHER,                                 :       04 Civ. 3407 (RJS)(FM)

                          Respondent.          :

--------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

        Petitioner Omar Robertson ("Robertson") brings this pro se habeas corpus

proceeding, pursuant to 28 U.S.C. § 2254 ("Section 2254"), to challenge his conviction

on one count of Murder in the Second Degree, following a trial in Supreme Court, Bronx

County, before the Honorable Efrain Alvarado and a jury. On April 12, 1999, Justice

Alvarado sentenced Robertson to an indeterminate prison term of twenty years to life. In

his habeas petition, Robertson argues that the prosecution (a) failed to prove that he acted

with depraved indifference, and (b) deprived him of a fair trial by (i) improperly showing

two witnesses a handgun not admitted into evidence and (ii) misleading the jury during its

summation.

        For the reasons set forth below, Robertson's petition has no merit and

should be denied. Additionally, because Robertson has failed to make the substantial

showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

## II.    Background

### A.    Trial

#### 1.    People's Case

Viewed in the light most favorable to the prosecution, the People's evidence established as follows:

In the early morning hours of December 15, 1996, Robertson and several of his friends were at a party in the basement of a church located on Valentine Avenue in the Bronx. During the party, Robertson and his friends became embroiled in a fight with several other people, including Alexander Vargas ("Vargas") and Vargas's best friend, Julian Torres ("Torres"). (Tr. 41-43, 285-88, 739-41a).[1] Eventually, the police arrived and directed everyone to leave. (Id. at 43-44, 108-09, 289, 740).

Outside the church, Robertson and another person retrieved two guns from a parked car's tire well. (Id. at 314-16, 371). Ernie Valerio ("Valerio"), another attendee at the party, then had a brief interaction with Robertson, during which Robertson lifted up his shirt to reveal a gun in his waist area. (Id. at 745-46).

---

[1]     "Tr." refers to the trial transcript. "H." refers to the transcript of the pretrial hearing. "V." refers to the voir dire transcript. "Ex." refers to the exhibits annexed to the affidavit of Assistant District Attorney Allen H. Saperstein, Esq., sworn to on November 4, 2004 ("Saperstein Aff.").

Vargas left the party with an individual named Sheik.  (Id. at 44).  As they were walking down Valentine Avenue, Vargas noticed that Robertson was following them.  (Id. at 45).  Although Vargas did not know Robertson, he had observed an individual named Rondell, who was a friend of Torres, punch Robertson in the face at the party.  (Id. at 135-36, 140, 218, 345-46).

Robertson ran up behind Vargas and Sheik, reached for the gun at his waist area, and threatened to "bust up or pop a shot."  (Id. at 598).  Robertson then loudly demanded that Vargas give him his jacket, while waving a "black automatic" "medium [to] large" gun in the air.  (Id. at 45-47, 75-76, 162-63, 291, 321-22).  Vargas and Sheik decided to flee despite Robertson's threats to kill them if they did.  (Id. at 48, 749, 852).  As the two men sought to escape, Beverly Ifill ("Ifill") and her cousin Debra Walcott ("Walcott") were standing nearby.  (Id. at 291, 409, 599, 644, 749).  Torres also was in the area.  (Id. at 48).  Ifill had not previously been involved in the altercation.  Indeed, she and Walcott had just left Walcott's mother's apartment to go to a different party.  (Id. at 594-96).

As Walcott hid behind a car on the opposite side of the street, Robertson fired two shots at Vargas and Sheik.  (Id. at 49, 599, 649, 750).  When the first shot was fired, Sheik bumped into Ifill and fell to the ground.  (Id. at 48-49, 72-73).  After the second shot, Sheik stood up and continued running from Robertson.  (Id. at 49).  Ifill, however, had been shot.  (Id. at 600-01, 865-66).

3

Walcott and Torres ran to Ifill's side to help her. (Id. at 294-95, 602-03). Subsequently, police officers and EMS personnel arrived at the scene. Ifill was transferred to a hospital, where she later died as a result of a gunshot wound. (Id. at 252, 608). Although the police never determined the caliber of the bullet that killed Ifill because it passed through her and was not recovered, two .9 mm shell casings were found at the crime scene. A ballistics expert determined that both rounds had been fired from the same weapon. (Id. at 533, 542, 724).

Based upon information obtained from witnesses to the shooting, the police arrested Robertson at his home the following day. (Id. at 1021, 1046-50). Later that same day, Vargas, Torres, and Valerio identified Robertson in separate line-ups. (Id. at 51-52, 327, 762-63; H. 12-17, 72-77, 131).

2. Defense Case

The defense called two New York Police Department detectives to testify about their interviews of witnesses to the shooting. (Id. at 1075-1121). Detective Martin Bradley's testimony suggested that Walcott told him on the night of the shooting that she saw a man pull a silver gun out of his waistband. (Id. at 1084-87). Detective Richard Quelch testified that Torres told him that there were people other than Robertson, Vargas, and Sheik in the vicinity at the time of the shooting. (Id. at 1100).

Robertson did not testify on his own behalf. (Id. at 1121).

4

### 3. Verdict and Sentencing

On March 3, 1999, the jury found Robertson guilty of Murder in the Second Degree on a depraved indifference theory. (Id. at 1490). The jury acquitted Robertson on a count charging him with Murder in the First Degree and two additional counts of Murder in the Second Degree, in which he was charged with felony murder and intentional murder. (Id.).

On April 12, 1999, Justice Alvarado sentenced Robertson to an indeterminate term of twenty years to life in prison. (Saperstein Aff. ¶ 3).

### B. .25 Caliber Handgun

During a pretrial hearing, the prosecutor played a videotape of an interview of Robertson which took place shortly after his arrest.[2] In that interview, Robertson admitted that he had carried a .25 caliber handgun on the night of the shooting. (H. 90B-90E). Robertson further admitted that he had fired a single shot from that weapon at two men shortly after leaving the party. According to Robertson, an unidentified man then responded by firing a single bullet at him. Robertson conceded that he did not know which of the shots led to Ifill's injuries, but he expressed remorse over the possibility that he might have caused her death. Robertson also noted that he had helped the police recover the .25 mm handgun that he used on the night of the Ifill shooting.

---

[2] At my request, the Office of the District Attorney sent me a copy of Robertson's videotaped interview which I reviewed (insofar as it was available) in the course of preparing this Report and Recommendation.

The videotape of Robertson's interview was not played at trial. Nevertheless, in his opening statement, Robertson's defense counsel, Arthur Greig, Esq., told the jury that he expected to "show that the gun that [Robertson] had was a small .25 caliber weapon," not the larger .9 mm weapon that likely was used to shoot Ifill. (Tr. 21).

Thereafter, during the questioning of Vargas, the prosecutor marked for identification, outside the presence of the jury, a box that contained Robertson's .25 caliber handgun. The prosecutor described the contents of the exhibit for the record as "a small dark colored automatic or semi-automatic handgun" and "the clip to that handgun and eight bullets." (Id. at 79). Justice Alvarado then instructed the prosecutor that the gun was not to be removed from the box or shown to the jury. (Id. at 79-80).

Consistent with this ruling, when the jury returned to the courtroom, the Justice explained that the item in the box was not in evidence and that the jurors were not permitted to see it. (Id. at 81-82). The prosecutor then asked Vargas a series of questions about how the gun in the box differed from the weapon Vargas saw Robertson holding on the night of the shooting. (Id. at 82-83). Mr. Greig objected to this line of questioning. (Id. at 83). Justice Alvarado sustained several objections and directed the prosecutor to ask a "general question" about the gun that Vargas viewed on the night of the shooting, not about the gun in the box. (Id.). In response, Vargas explained that the gun he saw in Robertson's hand the night of the shooting was "black" and "bigger." (Id.). Shortly thereafter, counsel approached the bench for an off-the-record conference, after which a

juror inquired whether he could "ask a question" about the "items [in the box]." (Id. at 84). Justice Alvarado responded, "You cannot ask a question. Unless and until an item is admitted into evidence, it cannot be displayed to the jury. That's why we have taken the precautions that we have." (Id.).

Later in the trial, the prosecutor also questioned Walcott about the gun in the box. (Id. at 632-33). After Mr. Greig once again objected, Justice Alvarado did not permit Walcott to answer questions about the gun in the box. (Id. at 633-35). The Justice did permit Walcott to testify, however, that the gun she saw the night of the shooting was "different" and had a "bigger" "[s]ilver black" handle. (Id. at 633).

Following a luncheon recess, Mr. Greig objected outside of the presence of the jury to

> that entire line of questioning concerning something which
> was not in evidence; apparently, it will not be or may not be
> introduced into evidence. It was, I thought, just being
> introduced to prejudice the jury concerning an issue which
> [the prosecutor] has presented no positive proof on; i.e., that
> being possession of the murder weapon in this case, and that's
> why I objected.

(Id. at 662). Justice Alvarado took note of the objection, but explained that the "item was hidden from the jury's view" and that the jury would not see it "until and unless it is introduced into evidence." (Id. at 663). Thereafter, the box containing Robertson's gun never was received into evidence, nor was the jury ever told that its contents had been

seized by the police as part of their investigation of him.  (See id. at 78-79, 1127, 1435-36).

At the close of the trial, during his instructions, Justice Alvarado initially charged the jury that "exhibits which were marked only for identification but were not ultimately admitted into evidence do not constitute evidence in this case and thus may not be considered by you."  (Id. at 1360-61).  The Justice further explained:

> During the course of this trial, you have heard testimony regarding a weapon, a gun which the People allege was used by . . . Robertson.  The People have not introduced this item in court as an exhibit.
>
> While it is necessary for the People to establish beyond a reasonable doubt that at the time in question such an item existed, I charge you now that if you find beyond a reasonable doubt that at the time in question the item did in fact exist, then the fact that the actual item was not produced here in court is of no consequence.

(Id. at 1382-83).

Both Mr. Greig and the prosecutor objected to this instruction because it suggested that the murder weapon had been recovered but was not in evidence. Accordingly, Justice Alvarado subsequently gave the jury a revised charge.  (Id. at 1435-40).  At the outset of his second discussion of the gun, Justice Alvarado instructed the jury to "ignore the original language."  He then repeated his earlier instruction, modified to state that:

> While it is necessary for the People to establish beyond a reasonable doubt the existence of such gun at the time in

question, I charge you that if you find beyond a reasonable doubt that at the time in question the item existed, then the fact that the actual item . . . was not introduced here in court as evidence is of no consequence.

(Id. at 1444-45).

C.      Subsequent Procedural History

In October 2002, Robertson appealed his conviction to the Appellate Division, First Department, arguing that: (1) the prosecution failed to prove beyond a reasonable doubt that he had a depraved indifference to human life because he had fired his gun "late at night, into a nearly deserted street," and "accidentally" hit someone; (2) he was denied his right to a fair trial because the prosecutor (a) displayed a handgun "not connected" to him and (b) made "burden-shifting and misleading summation arguments"; and (3) his sentence should be reduced in the interest of justice. (See Ex. 1 at 20-49).

On May 1, 2003, the Appellate Division unanimously affirmed Robertson's conviction. See People v. Robertson, 305 A.D.2d 123 (1st Dep't 2003). In its decision, the Appellate Division rejected Robertson's sufficiency-of-the-evidence claim, holding that

[t]he verdict convicting [Robertson] of depraved indifference murder was based on legally sufficient evidence and was not against the weight of the evidence. The record fails to support [Robertson's] claim that he fired into a nearly deserted street. On the contrary, [Robertson] fired shots in dangerous proximity to at least five people, killing one of them.

Id. (citations omitted).

With regard to Robertson's due process claim, the court found that he

> was not deprived of a fair trial when the prosecutor
> questioned two witnesses about a pistol that was not received
> in evidence [because t]he pistol was exhibited to the witnesses
> but concealed from the jury by a box, and the witnesses'
> testimony, along with the court's curative instructions (which
> met with [Robertson's] approval), were sufficient to prevent
> any prejudice.

Id. The court further observed that Robertson's claim that "this aspect of the trial suggested that he was guilty of an uncharged crime" was "speculative." Id. (citations omitted).

The court also held that Robertson had not preserved his claim that the prosecutor's summation was improper. Id. Although the court declined to review this claim in the interest of justice, it noted that "[w]ere we to review these claims, we would find no basis for reversal." Id. (citations omitted).

Finally, the court declined to reduce Robertson's sentence. See id.

On May 27, 2003, Robertson sought leave to appeal to the New York Court of Appeals on the basis of "all issues" outlined in his brief to the Appellate Division. (Ex. 5). On June 18, 2003, Robertson submitted a supplemental letter to then-Associate Judge George Bundy Smith, in which he amplified his arguments that there was insufficient evidence to convict him of depraved indifference murder and that the prosecutor's display of the handgun and remarks during summation had unduly prejudiced him. (See Ex. 6).

On July 11, 2003, Judge Smith denied Robertson's application for leave to appeal.  See People v. Robertson, 100 N.Y.2d 586 (2003).  Thereafter, on October 20, 2003, Judge Smith denied Robertson's pro se request for reconsideration of his application for leave to appeal.  See People v. Robertson, 100 N.Y.2d 645 (2003).

D.    Habeas Petition

Robertson timely filed his habeas petition on May 4, 2004.  (See Docket No. 2).  Because the petition did not establish that Robertson had exhausted his claims, then-Chief Judge Mukasey directed him to cure this deficiency.  (Docket No. 3).  Robertson complied by submitting an amended petition ("Petition" or "Pet."), which was filed on May 20, 2004.  (See Docket No. 4).  In that Petition, Robertson asserts that:

> 1.    The prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that [he] possessed the mental culpability required for depraved indifference [murder].
>
> 2.    [He] was denied his right to a fair trial by (a) the prosecution's exhibiting a gun to witnesses which was not connected to [him], and (b) the prosecution's burden-shifting and misleading summation arguments.

(Pet. ¶ 13) (block capitalization omitted).

Thereafter, the  respondent filed opposition papers on November 4, and Robertson filed reply papers on or about November 30, 2004.  (See Docket Nos. 12-13).[3]

---

[3]    Robertson's reply papers ("Reply") were not paginated.  For ease of reference, I have inserted page numbers on the original in the court file.

III.    Discussion

   A.    Procedural Default

      The respondent evidently concedes that Robertson's claims are fully

exhausted.  Nevertheless, even when a petitioner presents a colorable constitutional claim

that has been properly exhausted, a federal court is precluded from reviewing it if the

state court's prior denial of the claim rested on an adequate and independent state ground.

See, e.g., Harris v. Reed, 489 U.S. 255, 262-63 (1989); Wainwright v. Sykes, 433 U.S.

72, 81 (1971).  A procedural default qualifies as such an adequate and independent state

ground, Harris, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the

default and actual prejudice as a result of the alleged violation of federal law, or . . . that

failure to consider the claims will result in a fundamental miscarriage of justice."

Coleman v. Thompson, 501 U.S. 722, 750 (1991); Glenn v. Bartlett, 98 F.3d 721, 724 (2d

Cir. 1996); accord Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000).

      Additionally, when a state court relies on a state procedural bar, the

petitioner is barred from seeking habeas relief even though the state court has ruled in the

alternative on the merits of his federal claim.  Glenn, 98 F.3d at 724 (quoting Velasquez

v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).  In determining whether a claim may be heard,

courts "apply a presumption against finding a state procedural bar and 'ask not what we

think the state court actually might have intended but whether the state court plainly

stated its intention.'"  Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones

12

v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).  When the last state court to issue a reasoned decision relies on a state procedural bar, however, a court reviewing a habeas petition will presume that subsequent decisions rejecting the claim without discussion relied on the bar and did not silently consider the merits.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In this proceeding, the respondent argues that Robertson has procedurally forfeited his claim that the prosecutor "failed to present sufficient evidence . . . that [he] possessed the requisite mental culpability to sustain his conviction for murder in the second degree under the theory of depraved indifference to human life."  (Resp't's Mem. at 10 (quoting Pet. ¶ 13(a))).  This argument is based on a grammatical nuance.  Specifically, in his direct appeal, Robertson argued that the prosecutor failed to prove that he had acted with depraved indifference because he "accidentally struck the decedent upon firing two shots."  (Ex. 1 at 20 (block capitalization omitted)).  He therefore suggested that the "accident" was the fact that the bullet struck Ifill, not his firing of the weapon.  By comparison, in his Petition, Robertson now argues that "[he], accidentally, fired two shots . . . striking the decedent."  (Pet. (Attach) at 13(a)).  The respondent contends that this is a totally new assertion that the act of firing the gun was the "accident."  Despite this difference, Robertson's legal claim remains essentially unchanged.  Thus, both in his appeal and in his Petition, Robertson argues that the People's proof of his depraved indifference was insufficient.  I therefore conclude that

this claim is not procedurally barred, notwithstanding the difference in emphasis that the respondent correctly notes.

The respondent also contends that Robertson's claims with respect to the prosecutor's allegedly improper summation are procedurally defaulted. (See Resp't's Mem. at 38). In his Petition, Robertson asserts that the prosecutor improperly appealed to the jurors' "sympathies and fears" in summation by arguing that there was "no evidence to support a reasonable doubt" and misstating the facts with respect to the "People's missing witness." (Pet. ¶ 13(b)). This abbreviated statement of Robertson's due process claim is a distillation of the more extensive argument that his attorney advanced on direct appeal. (See Ex. 1 at 28-29, 34-41). In its decision affirming Robertson's conviction, however, the Appellate Division declined to consider Robertson's claims with respect to summation because Robertson failed to make specific contemporaneous objections. See Robertson, 305 A.D.2d at 123 ("[Robertson's] arguments regarding the People's summation are unpreserved and we decline to review them in the interest of justice.").

Pursuant to New York's contemporaneous objection rule, an objection must be raised at trial in order to preserve it for appellate review. N.Y. Crim. Proc. Law § 470.05(2) (McKinney 1994). The Appellate Division's finding of procedural default therefore constitutes an adequate and independent state ground for rejecting his claim. See Washington v. James, 996 F.2d 1442, 1447-48 (2d Cir. 1993) (federal courts are "reluctant to hear claims procedurally defaulted in state court . . . out of respect for our

dual court system and in deference to the integrity of the state courts") (internal citation omitted); Phillips v. Smith, 717 F.2d 44, 48 (2d Cir. 1983) ("[E]xplicit state court reliance on a procedural default bars federal habeas review of the forfeited claim absent a showing of cause and prejudice regardless of whether the state court ruled alternatively on the merits of the forfeited claim.").  Accordingly, this Court may not consider Robertson's summation-related claims unless he can establish a basis for excusing his procedural default.

As noted earlier, to overcome the denial of a claim on the basis of an adequate and independent state ground, a petitioner must demonstrate both cause for the default and actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  To establish cause for a default, a petitioner must adduce "some objective factor external to the defense" which explains why he did not raise the claim previously.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir. 1991).  The circumstances giving rise to cause include (1) interference by government officials which makes compliance impracticable, (2) situations in which the factual or legal basis for a claim was not reasonably known by counsel, and (3) ineffective assistance of counsel.  See Murray, 477 U.S. at 488; Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).  A showing of prejudice requires a petitioner to demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was

denied fundamental fairness. <u>Reyes v. New York</u>, No. 99 Civ. 3628 (SAS), 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999). Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001).

The closest that Robertson comes is to make a generalized claim that the prosecutor's summation violated his due process rights and amounted to "a fundamental error which [was] prejudicial and irreparable." (Reply at 7). Such conclusory language, however, is insufficient to meet his burden of establishing cause and prejudice or actual innocence. <u>See, e.g.</u>, <u>Kello v. Walsh</u>, No. 02 Civ. 1183 (HB), 2003 WL 21488015, *4 (S.D.N.Y. June 26, 2003) ("conclusory statement that [petitioner] was denied a fair trial" insufficient to establish cause); <u>Tineo v. United States</u>, 977 F. Supp. 245, 254 (S.D.N.Y. 1996) ("<u>general</u> and <u>conclusory</u> allegations fail to demonstrate" cause); <u>Roccisano v. United States</u>, 936 F. Supp. 96, 100 (S.D.N.Y. 1996) (finding cause requirement not met because of "the generality and brevity of Petitioner's allegations"); <u>Correa v. United States</u>, No. 92 Civ. 6637 (PKL), 1992 WL 380555, at *2 (S.D.N.Y. Dec. 4, 1992) (conclusory statement insufficient to show cause).

Accordingly, the Court cannot consider Robertson's procedurally-defaulted claims regarding the prosecutor's allegedly improper summation remarks.

In an effort to overcome the state court's findings of procedural default, Robertson argues that he "alerted the state court to the constitutional claim of [the]

prosecutor's summation" on "direct appeal," and that Mr. Greig had "specifically

objected to the prosecutor's comments" at trial. (Reply at 6-7). The issue, however, is

not whether Robertson exhausted his claim on appellate review, but whether his attorney

adequately complied with the contemporaneous objection rule at trial. In his brief on

appeal, Robertson contended that three sets of objections by Mr. Greig preserved his

summation issue for review. (See Ex. 1 at 40 (quoting Tr. 1254-55, 1314-15, 1319-20)).

In each such instance, however, Mr. Greig failed to state any basis for his objection either

in open court or outside of the presence of the jury. Mr. Greig therefore never explained

to the court that any of his objections were being made on the ground that the

prosecutor's summation violated Robertson's due process rights. He also did not make

any application for a curative instruction or a mistrial following the prosecution's

summation. (See Tr. 1352 (Mr. Greig responding, "None from the defense" to court's

post-summation inquiry as to whether there were "[a]ny applications?")). It follows that,

notwithstanding Robertson's suggestions to the contrary, his due process claim regarding

the prosecutor's summation is procedurally defaulted and not subject to review by this

Court.[4] See Cotto v. Herbert, 331 F.3d 217, 242 (2d Cir. 2003) (quoting Osborne v. Ohio,

---

[4]    Although this Report and Recommendation does not address the merits of
Robertson's summation argument, it bears mention that Justice Alvarado actually sustained
several of Mr. Greig's objections to the summation. (See, e.g., Tr. at 1238, 1241, 1264, 1283,
1285, 1289). The Justice also instructed the jury that the arguments of counsel during
summation are not evidence, that the court is solely responsible for instructing the jury on the
law, and that the prosecution always has the burden of proof in a criminal case. (See id. at 1238,
1320, 1357, 1359, 1362-63).

495 U.S. 103, 125 (1990)) (contemporaneous objection must "bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action . . . to preserve the claim for [appellate] review").

B.     Merits of Robertson's Claims

1.     Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401 (1993).  Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Robertson therefore bears the burden of proving, by a preponderance of the evidence, that his rights have been violated.  <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).  As the Second Circuit noted in <u>Jones</u>, the Supreme Court has "construed the amended statute so as to give independent meaning to

18

'contrary [to]' and 'unreasonable.'" 229 F.3d at 119. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d. at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Taylor, 529 U.S. at 389.

### 2.    Sufficiency of the Evidence

Robertson's first claim is that "the prosecution failed to present sufficient evidence . . . that [he] possessed the mental culpability required for depraved indifference [murder]." (Pet. ¶ 13(a)).

A habeas petitioner challenging the sufficiency of the evidence bears a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995) (internal quotation marks omitted). To prevail, the petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Bossett, 41 F.3d at 830 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)). Moreover, in considering such a sufficiency claim, a habeas court must weigh the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor. Jackson, 443 U.S. at 326. A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). Rather, insofar as there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must

"defer to . . . the jury's choice of the competing inferences." United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (citation omitted).

Under New York law, a person may be found guilty of Murder in the Second Degree on several different theories.  Here, the indictment charged, and the People therefore had to prove, that Robertson acted with "depraved indifference."  A defendant acts with that mental state when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."  N.Y. Penal Law § 125.25(2) (McKinney 2004).  At the time Robertson's conviction became final, the New York Court of Appeals had interpreted these statutory requirements as "focus[ing] not on the subjective intent of the defendant, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct."  People v. Sanchez, 98 N.Y.2d 373, 379-80 (2002) (internal quotation marks and citation omitted).

Viewing the circumstances surrounding the shooting objectively, it is clear that it would have been reckless for a person in Robertson's situation to fire his weapon at two bystanders since there was a considerable risk that someone might die as a result. Moreover, there is absolutely no evidence that Robertson fired his weapon inadvertently, as he now suggests.  Rather, the uncontradicted evidence shows that Robertson acted either with the intention of stealing a jacket, or to avenge a perceived slight at the earlier

church party, or because Vargas and Sheik defied his directive to remain stationary. The fact that two shots were fired also shows that the gun did not "accidentally" discharge.

As the Appellate Division observed, there also is no factual basis for Robertson's "claim that he fired into a nearly deserted street." Indeed, he "fired shots in dangerous proximity to at least five people, killing one of them." Robertson, 305 A.D.2d at 123. Additionally, because Vargas and Sheik were "moving targets," even if they were the only persons that Robertson saw on the street, there was a significant risk that he might miss them and strike someone else. (See Resp't's Mem. at 20).

For these reasons, the jury could reasonably conclude that a person discharging a weapon in the manner that Robertson did displayed a depraved indifference to human life. The Appellate Division therefore properly rejected Robertson's evidentiary insufficiency claim.

Since the date that Robertson's conviction became final, the New York Court of Appeals has revisited its case law concerning the depraved indifference murder statute, concluding that the requisite "depraved indifference to human life is a culpable mental state." People v. Feingold, 7 N.Y.3d 288, 294 (2006). Accordingly, the test is now subjective, not objective. Id. Even under this interpretation, however, it is clear that the evidence was more than sufficient to establish Robertson's guilt beyond a reasonable doubt. As noted above, Robertson's statements in the moments before the shooting establish that he had the intent to shoot Vargas and Sheik. The fact that he aimed his

weapon at them and then fired twice also entitled the jury to conclude that he hoped to kill

one or both of them. Finally, while it is true that one of the bullets struck Ifill instead of

Robertson's intended target or targets, this is irrelevant for the purpose of evaluating

whether Robertson acted with the requisite depraved indifference to human life. See

People v. Fernandez, 88 N.Y.2d 777, 781 (1996) ("The doctrine of 'transferred intent'

serves to ensure that a person will be prosecuted for the crime he or she intended to

commit even when, because of bad aim or some other 'lucky mistake,' the intended target

was not the actual victim.").

In sum, whether the applicable test of intent is objective or subjective, the

evidence was more than sufficient for the jury to find that Robertson caused Ifill's death

under circumstances establishing a depraved indifference to human life. Robertson's

sufficiency-of-the-evidence claim is therefore baseless.[5]

3.      Display of .25 Caliber Handgun

Robertson also argues that his "fundamental right to a fair trial" was

violated because "it was improper and prejudicial to mark a handgun as an exhibit

(unrelated to [his] case), then allow this same handgun to be viewed by witnesses in the

---

[5]      In his reply brief, Robertson also argues that the jury's verdict was against the
weight of the evidence. (Reply at 2). Under New York law, the Appellate Division has the
authority to reverse or modify a conviction on this basis. See N.Y. Crim. Proc. Law § 470.15(5)
(McKinney 1994). However, on federal habeas review, a petitioner's assertion that his
conviction was contrary to the weight of the evidence is not a cognizable claim. See Givens v.
Burge, No. 02 Civ. 0842 (JSR)(GWG), 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003)
(collecting cases).

presence of the jury." (Pet. ¶ 13(b)). Robertson further asserts that it was improper for the prosecutor to "repeatedly question[] witnesses about [the gun] concealed in a box which allowed jurors to conclude that the weapon somehow incriminated [him]." (Id.).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, state court evidentiary rulings generally "do not present constitutional issues cognizable in a habeas corpus petition." Hughes v. Phillips, 457 F. Supp. 2d 343, 367 (S.D.N.Y. 2006) (citing Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We . . . acknowledge our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by State trial courts.")). To prevail on an evidentiary claim, a habeas petitioner therefore must demonstrate that the evidentiary error "was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).

In his Petition, Robertson argues that the prosecutor's use of a handgun "unconnected" to his case was unduly prejudicial. (Pet. at 13(b)). In his direct appeal, Robertson cited People v. Johnson, 61 A.D.2d 923 (1st Dep't 1978), in support of this claim. In that case, a robbery victim died after being struck with a blunt instrument which was determined not to be a metal pipe that was recovered from the defendant's person when he was arrested shortly after the incident. Nonetheless, the prosecutor referred to the pipe in his opening, which, in turn, "led defense counsel to question a witness in an

effort to confirm that the pipe was not, and could not be, the murder weapon." Id. at 923-24. The prosecutor then showed the pipe to a later witness and the jury and erroneously argued in summation that the defendant had struck the deceased with the pipe. Id. at 924. On these facts, the Appellate Division held that the prosecutor's "unwarranted introduction" of the pipe into the case "was gravely prejudicial and seriously impaired the fundamental fairness of the trial." Accordingly, the conviction was reversed. Id.

Here, by comparison, it was defense counsel – not the prosecutor – who injected the .25 caliber handgun into the case, contending in his opening statement that the evidence that it was not the murder weapon established Robertson's innocence. It therefore was reasonable for the prosecutor to seek to show that the smaller weapon that Mr. Greig contended Robertson carried was distinguishable from the larger firearm that witnesses said had been used to shoot Ifill. Indeed, even if the smaller weapon had been identified as Robertson's gun and received in evidence, it clearly would have been relevant and not unduly prejudicial since at least one of the prosecution's witnesses testified that he saw two weapons removed from the tire well of a car shortly before the shooting took place. The fact that Robertson had such a weapon also was relevant to his state of mind. For these reasons, even if the jury had been permitted to see the gun or it had been received in evidence, Robertson would have received a fundamentally fair trial. See Moore v. Illinois, 408 U.S. 786, 799-800 (1972) (introduction of a shotgun, which was not the murder weapon, to show that the defendant was "the kind of pe[rson] who

use[s] shotguns" was not "so irrelevant or so inflammatory" as to deny him a fair trial);

Wright v. Sullivan, No. 86 Civ. 2314 (PKL), 1989 WL 145747, at *8 (S.D.N.Y. Nov. 28, 1989) (admission of a machete, which was not the murder weapon, was "relevant as an integral part of the events about which the witnesses testified and as evidence of the petitioner's state of mind").

Moreover, any conceivable risk of unfair prejudice was attenuated by the limited use that the prosecutor made of the challenged exhibit. Thus, the weapon itself never was shown to the jurors, nor did the prosecution seek to introduce it into evidence in their presence. (See Tr. 663). Justice Alvarado also greatly restricted the questioning about the exhibit and gave the instructions that counsel requested concerning the prosecution's failure to introduce the murder weapon into evidence at trial. (Id. at 82-84, 633-34, 1439-40, 1445). In addition, the prosecutor never even mentioned the exhibit in his summation. (Id. at 1232-1350).

In sum, it was Robertson's counsel who first put details about a second weapon before the jury. Thereafter, the prosecutor responded to Robertson's assertion in a limited way. In its decision, the Appellate Division concluded that Robertson's claim that "this aspect of the trial suggested that he was guilty of an uncharged crime" was "speculative." Robertson, 305 A.D.2d at 123. For the reasons set forth above, Robertson has not shown, as he must, that this determination was contrary to, or an unreasonable

application of, clearly established Supreme Court case law. He therefore is not entitled to habeas relief on this ground.

IV.    Conclusion

For the foregoing reasons, Robertson's habeas petition should be denied. Moreover, because Robertson has not made the substantial showing of the denial of a constitutional right, required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard J. Sullivan, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b).  Any requests for an extension of time for filing objections must be directed to

Judge Sullivan.  The failure to file timely objections will result in a waiver of those

objections for purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b); Thomas v. Arn, 474 U.S. 140 (1985).


Dated:  New York, New York
    March 26, 2008


            FRANK MAAS
          United States Magistrate Judge

Copies to:

Omar Robertson
#99-A-2380
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Allen H. Saperstein, Esq.
Assistant District Attorney
Office of the District Attorney
198 East 161st Street
Bronx, New York 10451
Fax: (718) 590-6523